OPINION
MOSKOWITZ, District Judge:
Michelle Wing appeals the district court’s revocation of her second term of supervised release, which had not yet commenced, based on newly discovered violations of conditions of her previously revoked first term of supervised release. Wing contends that the district court *863 lacked jurisdiction to revoke her second term of supervised release. In this matter of first impression, we conclude that a district court lacks jurisdiction under 18 U.S.C. § 3583(e)(3) to revoke a term of supervised release based on newly discovered violations of a previously revoked term of supervised release. Accordingly, we REVERSE and REMAND.
I
On August 8, 2001, a grand jury in the District of Montana returned an indictment against Michelle Wing, charging her with one count of bank embezzlement in violation of 18 U.S.C. § 656. On October 18, 2001, Wing entered a plea of guilty to the charge and was thereafter sentenced to six months in prison followed by five years of supervised release.
Wing’s term of supervised release commenced on February 11, 2004. On April 24, 2008, Wing’s probation officer filed a petition to revoke Wing’s supervised release. The petition alleged that Wing had violated the conditions of supervised release by: (1) providing her probation officer with a falsified document; (2) failing to obtain approval of her probation officer before making payments to the Washington State Employment Security Division; (3) incurring new debt with the purchase of a home and a vehicle without the advance approval of the probation officer; and (4) failing to submit timely monthly reports to her probation officer.
On June 6, 2008, the Montana district court found that Wing had committed all of the violations alleged in the petition. The district court revoked Wing’s supervised release and sentenced her to 3 months of imprisonment followed by 33 months of supervised release. Wing self-reported to prison on August 29, 2008.
On November 18, 2008, a grand jury in the Eastern District of Washington returned a 22-count indictment charging Wing with bank fraud, conspiracy, and identity theft, based on conduct that took place between June 1, 2006, and July 31, 2008.
On November 25,2008, Wing’s probation officer filed a petition with the Montana district court to revoke Wing’s second term of supervised release, which was scheduled to commence the very next day, based on Wing’s commission of the crimes alleged in the Eastern District of Washington case in addition to other violations (leaving the district of supervision without permission of the probation officer, failing to submit truthful and complete monthly reports, and failing to notify the probation officer of any change in employment). That same day, the Montana district court issued a warrant for Wing’s arrest.
On November 26, 2008, Wing was released from prison and was immediately arrested on the district court’s warrant. Before appearing for her revocation hearing in Montana, Wing was transferred to the Eastern District of Washington to face the criminal charges in that case. Wing ultimately pled guilty to a number of counts in the Eastern District of Washington case and was sentenced to 86 months of imprisonment and a five-year term of supervised release.
On November 20, 2009, Wing appeared before the Montana district court for a supervised release revocation hearing. During the hearing, Wing admitted to the violations alleged in the petition. Based on these violations of conditions of the first term of supervised release, the Montana district court revoked the second term of supervised release and imposed a sentence of 33 months of imprisonment to run consecutively to the sentence imposed in the *864 Eastern District of Washington.[1] The court did not impose an additional term of supervised release, reasoning that Wing would be under the supervised release of the sentence imposed in the Eastern District of Washington.
On November 25, 2009, Wing appealed the Montana district court’s revocation of her second term of supervised release. Wing argued on appeal that the district court lacked jurisdiction to revoke her term of supervised release because the term had not yet commenced. This court remanded the case because Wing had not presented her jurisdictional argument before the district court.
On remand, the district court ordered the parties to submit briefs on the jurisdictional argument raised on appeal. In an order filed on January 18, 2011, the court held that it had jurisdiction to revoke Wing’s second term of supervised release, reasoning that if it had known of the additional violations at the time it revoked Wing’s first term of supervised release, the court would not have sentenced Wing to only a three-month term of imprisonment:
In this regard, the second revocation sentence relates back to the Court’s original revocation hearing and accounts for the additional violations that were significant breaches of the Court’s trust, but were not known to the Court at that time. Simply put, the revocation challenged here pertained to the first term of supervised release.
Relying on language in Johnson v. United States, 529 U.S. 694, 704, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), the district court reasoned that the first term of supervised release “retained] vitality” and “continued to have some effect” even though it had been revoked. Therefore, the court held that it had jurisdiction to “adjust! ] Wing’s first revocation sentence by imposing a subsequent sentence that considered the full scope of her breaches of trust, as well as the need to protect the public from further crimes by her.”
II
We review de novo whether a district court has jurisdiction to revoke a term of supervised release. United States v. Ignacio Juarez, 601 F.3d 885, 888 (9th Cir.2010).
III
The issue before us is whether, under 18 U.S.C. § 3583, a district court has jurisdiction to revoke a future term of supervised release based upon newly discovered violations of conditions of a past term of supervised release. We have not located any reported decisions addressing this issue under the current version of the statute. As in all statutory interpretation cases, we look first to the language of the statute. We have examined the statutory scheme governing supervised release as well as the sentencing scheme for violations of supervised release, and conclude that the district court lacked jurisdiction to revoke Wing’s second term of supervised release.
A. Statutory Structure: 18 U.S.C. § 3583
In 18 U.S.C. § 3583, Congress has established a scheme where separate and distinct terms of supervised release may be imposed upon a repeat offender of su *865 pervised release conditions. Each term has its own conditions as well as its own beginning and end (either by termination or revocation). This statutory scheme leads us to conclude that once a term of supervised release has been revoked, a later-discovered violation of a condition of that term cannot form the basis of a revocation of a subsequent term of supervised release.
A district court’s authority to impose, modify, terminate, or revoke supervised release derives from § 3583. Subsections 3583(a)-(d) bestow upon district courts the power to impose supervised release, outline the factors to be considered when doing so, limit the length of terms of supervised release, and list the conditions of release that a court may order. Subsections (e) and (g)-(i) govern the modification, termination, and revocation of supervised release as well as the sanctions courts may impose upon revocation.
Our focus is on subsection (e), which gives a district court authority to modify, terminate, or revoke supervised release. Under subsection (e), a court may, after considering enumerated factors set forth in § 3553(a): (1) terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release (§ 3583(e)(1)); (2) extend a term of supervised release (if less than the maximum authorized term was previously imposed) and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release (§ 3583(e)(2)); or (3) revoke a term of supervised release. (§ 3583(e)(3)).
In 2000, when Wing committed her crimes of conviction, subsection (e)(3) provided in relevant part that the district court may:
revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such .term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case....
18 U.S.C. § 3583(e)(3) (2000).[2]
When revoking supervised release and imposing a term of imprisonment, the *866 court may include a requirement that the defendant be placed on another term of supervised release after imprisonment. 18 U.S.C. § 3583(h). In 2000, subsection (h) provided:
When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.[3]
Finally, § 3583(i) specifies under what circumstances a court may revoke a term of supervised release after the expiration of that term:
The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and ... a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.
B. Statutory Analysis: 18 U.S.C. § 3583(e)(3)
Wing argues that the district court lacked the jurisdiction to revoke her future term of supervised release for violations she committed during a past term of supervised release. The government, in contrast, contends that § 3583(e)(3) authorized the district court to revoke Wing’s second term of supervised release based on the newly discovered violations of conditions of her first term of supervised release.
In arguing that the district court had jurisdiction to revoke Wing’s second term of supervised release under 18 U.S.C. § 3583(e)(3), the government takes two extreme and contradictory positions regarding the relationship between Wing’s first and second terms of supervised release. First, the government agrees with Wing that her second term of supervised release was separate from her first term of supervised release, but argues that under the statute, a term of supervised release may be revoked based on the violation of a wholly separate term of supervised release. Next, the government claims that Wing’s second term of supervised release and first term of supervised release were one and the same. According to the government’s latter position, with which the district court agreed, Wing’s second term of release was actually a continuation of her first term, and therefore the district court could revoke the second phase of supervised release after discovering viola *867 tions that took place in an earlier phase of the same term of release. Neither of the government’s positions is persuasive or compelling under the statutory language.
Under the first of the government’s alternative readings of subsection (e)(3), the district court was permitted to “revoke a term of supervised release” (the not-yet-commenced second term of supervised release) because the district court found by a preponderance of the evidence “that the defendant violated a condition of supervised release” (a condition of the first term of supervised release). In other words, the government interprets subsection (e)(3) as allowing revocation of supervised release based upon a violation of a condition of any term of supervised release, not necessarily the term of supervised release that is being revoked.
The government argues that Congress could have specified that a court can revoke a term of supervised release when the defendant violated a condition of “the term of supervised release.” Instead, Congress varied its phrasing and authorized revocation upon violation of “a condition of supervised release.” The government contends that this broader language grants the district court authority to revoke a term of supervised release based solely on a finding that “the defendant violated a condition of supervised release,” no matter which term of supervised release.
We acknowledge that the relevant clause in subsection (e)(3), read in isolation, is ambiguous. The clause does not specify which term of supervised release the defendant must have violated. It does not expressly require that the violated condition relate to the term of supervised release that is being revoked, nor does it expressly permit revocation of future terms of supervised release based on violations of conditions of previously revoked terms of supervised release. Although, as pointed out by the government, the language does not specify that the condition violated must be of “the term of supervised release [being revoked]” or “such term of supervised release,” the language also does not provide that the condition violated may be of “any term of supervised release.”
To determine whether “a condition of supervised release” refers to a condition of any term of supervised release, or a condition of the specific term of supervised release that is being revoked, we look to the statutory framework. When interpreting words in a statute, “we start with the premise that ‘the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.’ ” American Bankers Ass’n v. Gould, 412 F.3d 1081, 1086 (9th Cir.2005) (quoting Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)). Our goal is to “understand the statute ‘as a symmetrical and coherent regulatory scheme’ and to ‘fit, if possible, all parts into a ... harmonious whole.’ ” Id. (quoting Brown & Williamson, 529 U.S. at 133, 120 S.Ct. 1291).
Section 3583 establishes a scheme under which distinct terms of supervised release may be imposed. If a district court revokes a term of supervised release under § 3583(e)(3) and sentences the defendant to a term of imprisonment, the court may again impose “a term of supervised release after imprisonment.” 18 U.S.C. § 3583(h). If the new term of supervised release is later revoked due to violations of conditions, subject to certain limitations, the district court may again impose a term of imprisonment and yet another term of supervised release. Congress could have chosen to have a continuing period of supervised release that recommences after *868 terms of imprisonment.[4] Instead, Congress created a structure of separate terms of supervised release, which guides our analysis of the statute.
Under the ordinary meaning of “revoke,” when a term of supervised release is revoked, the term is canceled, and any new term of supervised release that has been imposed is in effect. The conventional definition of “revoke” is “to void or annul by recalling, withdrawing, or reversing.” American Heritage Dictionary 1493 (4th ed. 2000). See also Webster’s Third New International Dictionary 1944 (1981) (“to annul by recalling or taking back”). Thus, when a term of supervised release is revoked, it has been annulled, and the conditions of that term do not remain in effect. Accordingly, a term of supervised release cannot be revoked based on a violation of a condition of a previously revoked term of supervised release, and subsection (e)(3) necessarily refers to a violation of the term of supervised release that is being revoked.
In Johnson, the Supreme Court applied an “unconventional” definition of “revoke” to subsection (e)(3). 529 U.S. at 706-07, 120 S.Ct. 1795. Under this “less common” definition, revoke can mean to recall without final abrogation, meaning that a “revoked” term can “retain vitality after revocation.” Id. at 707, n. 9, 120 S.Ct. 1795. However, as we discuss below, the Supreme Court’s application of the “unconventional” definition of “revoke” was based on the language of subsection (e)(3) before the 1994 amendments. The Court’s reasoning for adopting an “unconventional” definition of “revoke” does not apply to the amended statutory language, and there is no reason to believe that Congress used the term “revoke” in anything other than its ordinary sense.
The government’s interpretation is so broad that it logically would permit revoking a term of supervised release based on a violation of a condition of a prior term of supervised release that relates to a different offense. (In this case, the terms of supervised release stemmed from the same original offense.) Thus, under the government’s reading, it is possible that the following scenario could take place: (1) Defendant is convicted of Offense A and is sentenced to a term of supervised release, which ends; (2) Defendant is then convicted of offense B, a more serious felony than Offense A, and is sentenced to a term of supervised release; (3) During the second term of supervised release, the court is made aware of a violation of a condition of the first term of supervised release; and (4) The court revokes the second term of supervised release based on the violation of the condition of the first term of supervised release, and sentences the defendant to a term of imprisonment and a new term of supervised release. The problem with this scenario is that it does not fit into the statutory scheme for determining the maximum term of imprisonment upon revocation and the maximum length of a term of supervised release upon revocation.
Under subsection (e)(3), upon revocation, a defendant may not be required to serve on such revocation, “more than 5 *869 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.” (Emphasis added.) Under subsection (h), the length of a term of supervised release imposed upon revocation shall not exceed “the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.” (Emphasis added.) Under the scenario set forth above, it would be unclear whether the maximum term of imprisonment and maximum length of supervised release would be governed by Offense A or the more serious Offense B. The government’s reading requires permitting a scenario that Congress clearly did not envision — the revocation of a supervised release term based on the violation of a condition of a term of supervised release that resulted from a different original offense.
Our reading of subsection (e)(3) is buttressed by the 2003 amendment of the statute.[5] The PROTECT Act amended subsection (e)(3) to provide:
[A] defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case.
(Emphasis added). Under the government’s interpretation of (e)(3) as it now stands, a defendant could receive multiple maximum terms of imprisonment based upon violations of the same term of supervised release. It is doubtful that Congress intended such a result.
Furthermore, the government’s interpretation is undermined by § 3583(i). Under this subsection, a district court has power to revoke a term of supervised release “beyond the expiration of the term of supervised release” only where a warrant or summons based on an allegation of a violation of a condition of supervised release has been issued before the expiration of the term of supervised release.[6] It would make little sense for Congress to restrict the circumstances under which a district court can revoke an expired term of supervised release if courts have the authority to punish any belatedly discovered supervised release violation, however ancient, by revoking terms of supervised release that are ongoing or have yet to begin.
After urging that under subsection (e)(3), a present or future term of supervised release can be revoked for violations of a separate, previously revoked term of *870 supervised release, the government precipitously tacks in the opposite direction and argues that under subsection (e)(3), both of Wing’s terms of supervised release were one and the same — that is, the later term was simply a continuation of the former term. Following this same rationale, the district court relied on Johnson, and held that it had jurisdiction to revoke Wing’s second term of supervised release based on violations of the first term of supervised release, because the first term of supervised release “continued to have some effect and vitality.”
In Johnson, the Supreme Court held that under § 3583(e)(3), as it was written before the 1994 amendments, the word “revoked” was used in an “unconventional sense” that allowed a “revoked” term of supervised release to “retain vitality after revocation” and permitted any balance of the revoked term not served in prison to be served out as supervised release. 529 U.S. at 706-707, 120 S.Ct. 1795. Prior to the 1994 amendments, subsection (e)(3) provided that a district court could “revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release.... ” Id. (emphasis added). Based on this language, the Supreme Court reasoned that because all or part of “the term of supervised release,” not a “term of imprisonment,” is being served in prison, then “something about the term of supervised release survives the preceding order of revocation.” Id. at 705, 120 S.Ct. 1795. Accordingly, the remaining balance of the term of supervised release may be served out as supervised release when the reincarceration is over, effectively as a continuation of the first term of supervised release. Id. at 706-07,120 S.Ct. 1795.
Guidance from both the Supreme Court and Congress indicates that the “unconventional” sense of revoke is now obsolete in light of the 1994 amendments. The 1994 amendments added subsection (h), which provides that a prisoner serves a post-revocation “term of imprisonment” rather than all or part of a term of supervised release. The 1994 amendments also replaced subsection (e)(3)’s language, “all or part of the term of supervised release,” with “all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release.” (Emphasis added.) The amendments made it clear that a defendant sentenced to prison upon revocation of supervised release is not serving a portion of the original term of supervised release, but, rather is serving a “term of imprisonment,” the length of which is all or part of the term of supervised release authorized by statute for the original offense.[7] Under the amended language, a term of supervised release after imprisonment is not the balance or remainder of the original term of supervised release, but, rather, is a new and separate term.
In Johnson, the Supreme Court itself recognized that the statutory language upon which it was relying was changed by the 1994 amendments: “As it was written before the 1994 amendments, subsection (3) did not provide (as it now does) that the court could revoke the release term and require service of a prison term equal *871 to the maximum authorized length of a term of supervised release.” Id. at 705, 120 S.Ct. 1795. The Supreme Court’s analysis of the word “revoked” was based on its reading of subsection (e)(3) “before its amendment and the addition of subsection (h).” Id. at 713, 120 S.Ct. 1795. In particular, the Court explained that under the pre-amendment language, which permitted the court to require the defendant to “serve in prison all or part of the term of supervised release,” it is not a “ ‘term of imprisonment’ that is to be served but all or part of ‘the term of supervised release.’ ” Id. at 705, 120 S.Ct. 1795. This reasoning no longer holds true given the use of the “term of imprisonment” in subsection (h). See also United States v. Xinidakis, 598 F.3d 1213, 1217 n. 5 (9th Cir.2010) (discussing the limited reach of Johnson and pointing out the differences between the pre-amendment and post-amendment language of subsection (e)(3)).
Finally, subsection (h), by its own terms, distinguishes between terms of release rather than periods or phases of the same term of release. The dissent correctly notes that neither the Court nor Congress uses the term “first” and “second” term of supervised release. Dissent at 876-77. Whatever “nomenclature” is best, id., the fact remains that subsection (h), added in 1994, clearly distinguishes between the “term of supervised release after imprisonment” and the “original term of supervised release.”
Contrary to the position taken by Judge Tallman in his dissent, the Supreme Court’s reasoning cannot be extended to § 3583 as it exists after 1994, and does not support the proposition that once a term of supervised release is revoked, it continues to have some effect, permitting the district judge to sentence the defendant to additional terms of imprisonment based on violations discovered after revocation.
C. Sentencing Scheme for Supervised Release Violations
Our interpretation of § 3583(e)(3) finds further support in the sentencing scheme for violations of supervised release set forth in the Guidelines Manual. Under this scheme, separate terms of imprisonment are imposed for violations of separate terms of supervised release, not separate violations of the same term.
Under U.S.S.G. § 7B1.1, supervised release violations are separated into three grades — Grade A, Grade B, and Grade C violations. Section 7B1.4 sets forth guideline ranges of imprisonment based on the grade of the violation and the defendant’s Criminal History Category.
When there are multiple violations of the conditions of a term of supervised release, “the grade of the violation is determined by the violation having the most serious grade.” § 7Bl.l(b). Thus, violations of conditions of a term of supervised release are not individually punished. The court considers all of the violations pertaining to the term of supervised release before it and determines the term of imprisonment based upon the most serious violation.
The Guidelines Manual does not provide for the continued ability to impose terms of imprisonment for violations of conditions of a previously revoked term of supervised release. If district courts were permitted to revoke a subsequent term or terms of supervised release based upon newly discovered violations of a prior term of supervised release, there would be uncertainty regarding the circumstances under which imprisonment could be imposed and the length of such imprisonment. For example, would the district court only be allowed to revoke the subsequent term if the newly discovered violations were more serious than the previously known viola *872 tions? In calculating the appropriate term of imprisonment for the newly discovered violations, would the length of previously imposed terms of imprisonment for violations of the same term of supervised release have to be subtracted? Adopting the dissent’s reading would therefore give rise to inconsistency and confusion, not just within the statutory scheme, but also within the sentencing scheme under the Guidelines.
D. Public Policy
Ordinarily, an analysis of the relevant statute and controlling case law would conclude our discussion. The government and dissent, however, see fit to go far beyond the statutory text to public policy considerations that purportedly support their claim that the revocation of Wing’s second supervised release was appropriate. See Dissent at 876-77, 877-79.
The government argues that public policy supports its position because if courts lacked the authority to punish subsequently discovered violations of previously revoked terms of supervised release, devious defendants would have the incentive to insulate serious violations from penalty by quickly committing and coming forward with a less severe violation, and obtaining a revocation of supervised release based on the less serious violation. Although the scenario the government presents is theoretically possible, we are not convinced that defendants who have committed serious violations will risk drawing attention to themselves for the purpose of manipulating supervised release revocation proceedings. The government’s concern is clearly more theoretical than realistic, and, more importantly, does not address the statutory scheme.
The dissent in turn raises concerns about defendants squeezing out “crocodile tears” to convince judges to release them in between terms of supervised release — a period of time the dissent terms the “Twilight Zone” — so they may commit crimes without consequences. Dissent at 876-77, 880.[8] At the outset, we note that the extremely unlikely scenario that the dissent finds so fearsome appears not to have disturbed Congress. If Congress wishes to expand the ability of district court judges to prevent or deter further criminal activity between periods of supervised release, Congress may enact legislation doing so.
Under the statutory scheme Congress has chosen, once a term of supervised release is revoked, that term ends, and any term of supervised release commencing after imprisonment for violation of the first term of supervised is a new and separate term. That Congress has made such a policy choice should be enough for any court. However, we will address the dissent’s arguments to dispel its concerns.
Initially, we note that in this case, Wing’s second term of supervised release *873 was revoked for violations occurring during the first term of supervised release, not for crimes committed during the time between the two terms of supervised release. Although the Indictment filed in the Eastern District of Washington covered conduct between June 1, 2006 and July 31, 2008, the Montana district court did not make any findings that Wing had committed crimes after the revocation date of June 10, 2008. Instead, the district judge specified, “The conduct in all four violations occurred during Wing’s term of supervised release that commenced in February 2004.... ”
Although Judge Tallman’s concern regarding “twilight zones” is understandable, district courts are not without means to ensure that defendants do not use the gap between periods of supervised release to go on crime sprees. First of all, a district court judge does not have to allow a defendant whose supervised release has been revoked and has been sentenced to prison to be released on bail so she can self-surrender. Under 18 U.S.C. § 3143, a defendant should not be released pending execution of a sentence unless the judge finds “by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).” In practice, defendants who are sentenced to prison for supervised release violations are not likely to be given the opportunity to self-surrender, especially in cases such as this one where the defendant is allegedly continuing to engage in the same type of criminal behavior (financial dishonesty) for which she was originally convicted.
Further, in cases where a district court chooses to release the defendant on her personal recognizance or upon execution of an unsecured appearance bond, the release is subject to the condition that the person not commit a federal, state, or local crime during the period of release. 18 U.S.C. § 3142(b). If the court believes additional conditions of release are necessary, the court may impose such conditions under 18 U.S.C. § 3142(c).
If a defendant commits a crime while on release, the defendant shall be sentenced, in addition to the sentence prescribed for the offense, to (1) a term of imprisonment of not more than ten years if the offense is a felony; or (2) a term of imprisonment of not more than one year if the offense is a misdemeanor. 18 U.S.C. § 3147. Additionally, under the Sentencing Guidelines, courts are instructed to apply a three-level sentencing enhancement for a commission of an offense while on release. U.S.S.G. § 3C1.3. Further, a person who violates a condition of his or her release is subject to a criminal prosecution for contempt under 18 U.S.C. § 401; 18 U.S.C. § 3148(a).
Thus, district courts have tools to safeguard against the release of defendants who may pose a danger to the public. The district courts also have the power to penalize defendants who abuse the court’s trust during release.
One further benefit of our interpretation of § 3583(e)(3) is that it promotes finality and the avoidance of piecemeal appeals. Under the government’s interpretation, a defendant’s sentence for violating conditions of a term of supervised release would be uncertain and subject to change as long as the defendant had time remaining on supervised release. The dissent’s conclusory assertion that our concern regarding finality is “hollow” and subordinate to the menace that is the “Twilight Zone” is unsupported by anything other than the dissent’s own policy balancing.
Ultimately, the dissent gives insufficient credit to the nuanced purposes the statute embodies. The statute is meant to curb recidivism to be sure, but not at the cost of *874 subjecting defendants to an ongoing risk of punishment for violations of some prior period of supervised release, however remote, and creating confusion in sentencing for supervised release violations. There are policy considerations on both sides of the question. We decline — indeed we lack the authority — to disturb the careful balance Congress has created.
E. Rule of Lenity
Even if we were to conclude that after considering the text, structure, history, and purpose of the statute, there remains a “grievous ambiguity or uncertainty” regarding the legal question before us, we would apply the “rule of lenity.” Gollehon v. Mahoney, 626 F.3d 1019, 1027 (9th Cir.2010). The rule of lenity applies to the Sentencing Guidelines as well as to penal statutes and provides that ambiguities concerning the ambit of criminal statutes should be resolved in favor of lenity to the defendant. United States v. Fuentes-Barahona, 111 F.3d 651, 653 (9th Cir.1997). Application of the rule of lenity in this case would result in the same interpretation of § 3583(e)(3) as we adopt above.
IV
We conclude that the district court did not have jurisdiction under § 3583(e)(3) to revoke Wing’s second term of supervised release based on newly discovered violations of conditions of her revoked term of supervised release.[9] For the reasons discussed above, we interpret subsection (e)(3) as requiring that the court find by a preponderance of the evidence that the defendant violated a condition of the term of supervised release that is being revoked.
Accordingly, we REVERSE and REMAND to the district court to vacate the sentence and judgment imposed on November 20, 2009.

. Although some of the conduct underlying the Eastern District of Washington indictment occurred after the revocation of Wing's first term of supervised release and before she self-reported to prison on August 29, 2008, the Montana district court found, "The conduct in all four violations occurred during Wing's term of supervised release that commenced in February 2004...." (Order, Jan. 18, 2011, EOF 87.)

. In 2003, subsection (e)(3) was amended by the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act”), Pub. L. 108-21, § 101, 117 Stat. 650, 651. Prior to the 2003 amendments made to § 3583(e)(3) by the PROTECT Act, when calculating the maximum term of imprisonment that could be imposed upon revocation of supervised release, courts would subtract the aggregate length of prior imprisonment terms imposed upon revocation of supervised release from the statutory maximum. See United States v. Jackson, 329 F.3d 406, 407-08 (5th Cir.2003). The PROTECT Act amended subsection (e)(3) to make it clear that the statutory maximum term of imprisonment applies “on any such revocation,” meaning that the statutory maximum term of imprisonment can be imposed for any one of multiple revocations of supervised release. See United States v. Knight, 580 F.3d 933, 935-37 (9th Cir.2009).

. Under this version of § 3583(h), a subsequent term of supervised release could be imposed only when the defendant was required to serve a term of imprisonment that was "less than the maximum term of imprisonment authorized under subsection (e)(3).” The PROTECT Act amended subsection (h) by eliminating this language from the statute. However, both before and after the 2003 amendments, under subsection (h), the length of a term of supervised release imposed following revocation cannot exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less the aggregate of all terms of imprisonment imposed upon revocations of supervised release. Knight, 580 F.3d at 940.

. Prior to the addition of subsection (h) in 1994 by the Violent Crime Control and Law Enforcement Act of 1994, § 110505(2)(B), 108 Stat. 2017, the United States Sentencing Commission's Guidelines Manual referred to the possibility that a defendant could be ordered to "recommence” supervision upon release from imprisonment. See U.S.S.G. § 7B1.3(g)(2), p.s. (Nov. 1993). In subsection (h), Congress made it clear that a new term of supervised release commences after the term of imprisonment. Effective November 1, 1995, Amendment 533 revised the language of § 7B 1.3(g)(2) to eliminate references to "recommencement” of supervised release.

. Although the amended version of subsection (e)(3) would not apply to Wing because her crimes of conviction occurred in 2000, the amendment sheds light on the interplay between terms of supervised release and terms of imprisonment imposed upon revocation.

. Although Wing's term of release arguably did not “expire'' but was, rather, revoked, the government’s argument that a defendant may be punished for violations during past terms of supervised release extends to all past terms of release, whether they expired or were revoked. Further, we think it anomalous that Congress would give the government an unlimited amount of time to discover and punish a defendant for serious supervised release violations that occurred during a revoked term, but provide no lee-way as to the timing for seeking punishment against defendants who committed equally, or more, serious violations during terms that expired.

. Before 1994, the cumulative length of the period of imprisonment upon revocation and subsequent period of supervised release was limited by the length of the original period of supervised release actually imposed by the court. Consistent with the reasoning of Johnson, because the periods of imprisonment and subsequent supervised release were a continuation of the original term of release that was imposed, they were necessarily subject to the same limitation in length. See United States v. Anderson, 519 F.3d 1021, 1025 (9th Cir. 2008).

. In his dissent, Judge Tallman envisions an ominous "Twilight Zone” episode in which a defendant, who is serving three months on a revocation of supervised release strangles two inmates and leaves another in a coma. Judge Tallman expresses disbelief that a district court cannot revoke the defendant’s upcoming period of supervised release based on her conduct. However, under 18 U.S.C. § 3624(e), "A term of supervised release does not ran during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.” Thus, even setting aside the argument that revocation ends a term of supervised release, it is clear that the hypothetical defendant was not on supervised release at the time that she committed her violent acts in prison and thus could not be punished for violating a condition of supervised release. Of course, if there was actual proof that she committed the homicides, she would be prosecuted for murder.

. To the extent the revocation of Wing's second term of supervised release can be characterized as a "modification'' of the first revocation sentence, the district court lacked jurisdiction to modify the sentence. The district court imposed the additional prison time well after the 14-day period for corrections permitted under Fed.R.Crim.P. 35(a). Significantly, none of the grounds for modification set forth in 18 U.S.C. § 3582(c) apply-