**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4546

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCUS L. HARRIS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:08-cr-00401-REP-1)

Argued: September 15, 2017                    Decided: December 19, 2017

Before SHEDD, AGEE, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion in which Judge Shedd and Judge Agee joined.

**ARGUED:** Laura Jill Koenig, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Brian R. Hood, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, Patrick L. Bryant, Appellate Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

FLOYD, Circuit Judge:

Appellant Marcus L. Harris appeals the revocation of his supervised release. The district court revoked his original term of supervised release for a technical violation, and imposed a second term of supervised release. Soon after, the court revoked Harris's second term of supervised release for a substantive violation. Harris argues that the district court lacked jurisdiction to revoke his second term of supervised release. Assuming the court had jurisdiction, Harris further argues that the revocation sentence exceeded the statutory maximum. Because the district court retained jurisdiction to revoke Harris's supervised release a second time, and properly prescribed the maximum sentence permitted under 18 U.S.C. § 3583(e)(3), we affirm.

I.

In 2009, Harris pled guilty to Possession with Intent to Distribute 5 Grams or More of Cocaine Base, a Class B felony under 21 U.S.C. § 841. The district court sentenced Harris to a term of imprisonment and 48 months of supervised release ("original term"). Harris began his original term of supervised release on September 8, 2014. The conditions of the release specified that Harris "shall not commit another federal, state or local crime," and "shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer . . . ." J.A. 20.

In July 2015, Harris was involved in a traffic stop by the Petersburg Bureau of Police ("PBP"), which led to the discovery of firearms and substances suspected to be drugs, and the execution of two search warrants at his home. Harris failed to report the

2

PBP officers' questioning in connection with the search warrants to his probation officer, but the probation officer eventually learned of the encounter. As a result, on September 3, 2015, the government filed a petition ("original petition") in federal court seeking to revoke Harris's original term of supervised release for two alleged violations: (1) commission of a crime—Possession of a Firearm by a Convicted Felon and (2) commission of a crime—Possession of Controlled Substance.

While the original petition was pending, on September 24, 2015, Harris was separately arrested by the PBP and charged in state court with murder and use of a firearm in the commission of a felony. The government subsequently filed three addenda to the original petition, indicating that the state investigation of the murder charge was connected to the July traffic stop involving the drugs and firearms. The first addendum alleged that Harris failed to notify his probation officer within 72 hours of questioning by law enforcement, referencing the PBP's execution of the search warrants. The second addendum alleged Harris's two new state criminal charges as the basis for revocation. The third addendum requested that the district court issue an arrest warrant based on the second addendum's allegations. The district court approved the government's request to amend the original petition through these addenda and issued an arrest warrant.

The district court held a revocation hearing on October 6, 2015. The court revoked Harris's original term of supervised release for his failure to report, as alleged in the first addendum, and imposed the first revocation sentence. This sentence consisted of one month of imprisonment (from October 6, 2015, to November 5, 2015) and 40 months

3

of supervised release. Given the pending state court proceedings, the district court neither dismissed nor ruled on the allegations regarding the violations based on the state criminal charges.

While Harris was serving his one month imprisonment, a federal grand jury indicted Harris for Possession of a Firearm by a Convicted Felon for the firearms discovered during the July 2015 traffic stop. Based on this federal indictment, the government filed a fourth addendum to the original petition, alleging the commission of this crime as a new basis for revoking Harris's supervised release. On October 23, 2015, the district court approved the fourth addendum and issued an arrest warrant on the basis of these allegations. The district court also granted the government's motion to dismiss the original petition and other addenda, allowing the fourth addendum to supersede other allegations. Harris remained in pre-trial detention pending his federal criminal trial, even after he completed his one-month, post-revocation imprisonment.

On April 6, 2016, Harris was convicted of Possession of a Firearm by a Convicted Felon. Based on this conviction, on August 18, 2016, the district court revoked Harris's supervised release again and imposed a second revocation sentence, consisting of 36 months of imprisonment and 24 months of supervised release. Harris appeals this second revocation of his supervised release. Harris claims that the district court lacked jurisdiction to revoke his supervised release, and that even if it had jurisdiction, the court exceeded the statutory maximum for a revocation sentence under 18 U.S.C. § 3583.

We first consider whether the district court had jurisdiction to revoke Harris's supervised release a second time. This Court reviews de novo whether the district court had jurisdiction to rule upon alleged violations of supervised release. *United States v. Barton*, 26 F.3d 490, 491 (4th Cir. 1994). We hold that the district court had jurisdiction to revoke Harris's supervised release a second time.

A.

It is well-established that a revocation does not end a term of supervised release. 18 U.S.C. § 3583 governs the district court's authority to revoke, extend, modify, or terminate a defendant's term of supervised release. Under 18 U.S.C. § 3583(e), the court may

> (1) terminate a term of supervised release and discharge the defendant released . . . ;
> (2) extend a term of supervised release . . . at any time prior to the expiration or termination of the term of supervised release . . . ;
> (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . .

18 U.S.C. § 3583(e)(1)–(3). When the district court terminates a term of supervised release, the defendant is discharged from the court's supervision. Termination "end[s]

5

the term of supervised release without the possibility of its reimposition or continuation at a later time." *Johnson v. United States*, 529 U.S. 694, 704 (2000). "Thus, if the district court later discovered that the defendant had earlier violated some condition of his supervised release, the court would lack authority to send him back to prison for that violation *qua* violation." *United States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017).

By contrast, when the court revokes a term of supervised release, the defendant is not discharged from the court's supervision. The court may "require the defendant to serve in prison all or part of the term of supervised release . . . ." 18 U.S.C. § 3583(e)(3); *see also* 18 U.S.C. § 3583(h) (allowing the court to include a post-revocation term of supervised release to follow the post-revocation imprisonment as part of a revocation sentence). After revocation, the defendant continues to serve his term of supervised release, but does so in prison. Revocation merely " 'recall[s],' 'call[s] or summon[s] back' the release." *United States v. Winfield*, 665 F.3d 107, 110 (4th Cir. 2012) (quoting *Johnson*, 529 U.S. at 706) (alterations in original); *see also Cross*, 846 F.3d at 190 ("Revocation therefore revokes only the release part of supervised release . . . ."). Unlike termination, revocation does not end the term of supervised release; instead, the term of supervised release continues on past revocation. *Johnson* 529 U.S. at 705 ("[I]f 'the term of supervised release' is being served, in whole or part, in prison, then something about the term of supervised release survives the preceding order of revocation.").

Based on *Johnson*'s holding that a term of supervised release survives past a revocation, we similarly held in *Winfield* that the district court's jurisdiction over the

6

supervised release continues past revocation. 665 F.3d at 112. In *Winfield,* the district court revoked Winfield's release based on technical violations and sentenced Winfield to 12 months of imprisonment. *Id.* at 109. The court, however, postponed adjudicating the substantive violations pending a state criminal trial. *Id.* When the court held a second revocation hearing, Winfield argued that the first revocation had deprived the district court of its jurisdiction. *Id.* at 110. We looked to the Supreme Court's reasoning in *Johnson*, and the Third Circuit's determination in a similar case that the first revocation "did not deprive the court of its jurisdiction to hold a second violation hearing and impose additional prison time for violations committed prior to the revocation of the release." *Id.* at 111 (citing *United States v. Johnson*, 243 F. App'x 666, 668 (3d Cir. 2007)). In upholding Winfield's second revocation sentence, we applied the Third Circuit's reasoning that if "a revoked term of supervised release continues to have some effect post-revocation," then the district court's supervisory authority continues as well. *Id.* Our holding in *Winfield* informs our decision today.

## B.

The main thrust of Harris's argument is based on the timing of the government's petitions. In Harris's view, *Winfield* controls only when the government files all operative petitions before the first revocation.[1] Based on this reading of *Winfield*, Harris

---

[1] Harris believes that "*Winfield* was wrongly decided and should be reconsidered." Appellant Br. 20. We disagree.

argues that *Winfield* does not control this case because the government filed the fourth addendum—which served as the basis for his second revocation sentence—after the first revocation. We reject this argument for three reasons.

First, Harris's argument is premised on a definition of "revoke" that the Supreme Court and this Court have rejected. Relying on a pre-*Johnson* case from a sister circuit, Harris asserts that "[o]nce a term of supervised release has been revoked under § 3583(e)(3), there is nothing left to extend, modify, reduce, or enlarge under § 3583(e)(2). The term of release no longer exists." *United States v. Holmes*, 954 F.2d 270, 272 (5th Cir. 1992), *abrogated by Johnson*, 529 U.S. 694. In Harris's view, because the supervised release term ceases to exist after revocation, the government brings its additional charges too late if it brings them after revocation. This definition of "revoke" directly contradicts the Supreme Court's explanation in *Johnson* that a supervised release term continues to exist after revocation, and our application of that definition in *Winfield*.[2] We decline to return to a pre-*Johnson* definition of "revoke."

---

[2] Harris finds support in the Ninth Circuit's decision in *United States v. Wing*, 682 F.3d 861, 868 (9th Cir. 2012). In *Wing*, the court concluded that "the Supreme Court's application of the 'unconventional' definition of 'revoke' [in *Johnson*] was based on the language of subsection (e)(3) before the 1994 amendments." The Ninth Circuit insisted that the Supreme Court's interpretation of "revoke" in *Johnson* did not apply to the newly amended statute. Instead, the court adopted an ordinary meaning of "revoke"—"to void or annul by recalling, withdrawing, or reversing." *Id.* (citation omitted). Accordingly, the court held that a term of supervised release could not be revoked based on a violation of a condition of a previously revoked term of supervised release. *Id.* at 863.

Because *Winfield* remains binding precedent of this Court, we cannot adopt a contrary definition of "revoke." In our view, even considering the post-*Johnson*

8

Second, our decision in *Winfield* did not rest on the fact that the government filed all of its petitions before the first revocation.  Here, as Harris points out, the government filed the fourth addendum after the first revocation, whereas in *Winfield*, the government filed all petitions before the first revocation.  Harris's reliance on the timing of the petition relative to the first revocation is misplaced.  Our holding in *Winfield* did not turn on the fact that the government filed its petitions before the first revocation.  Instead, we held that the court maintained jurisdiction because the government filed the petition before Winfield's *supervised release* expired.  665 F.3d at 112.  It is the timing of the petition relative to the expiration of supervised release that matters.  *See id.* ("[A] district court is within its authority to hold bifurcated violation hearings based on a petition filed before the supervised release's expiration . . . ."); *see also Cross*, 846 F.3d at 190 ("[T]he district court's supervisory authority continues until the defendant's supervised release terminates or expires.").

Here, the government filed the fourth addendum during Harris's one-month, post-revocation prison term.  Based on our holding in *Winfield*, the first revocation did not end Harris's supervised release.  Moreover, the government filed the fourth addendum during Harris's post-revocation prison term, requiring us to find that the government filed the

---

amendments to § 3583(e)(3), *Johnson* and *Winfield* are still good law.  *See Wing*, 682 F.3d at 877 (Tallman, J., dissenting) ("Congress has amended § 3583 seven different times without altering any of the relevant terms interpreted in [*Johnson*].").  Section 3583(e)(3) "says now, just as it did then, that revocation means the defendant must 'serve in prison all or part of the term of supervised release.'"  *Cross*, 846 F.3d at 190.

fourth addendum while Harris's supervised release remained in effect.[3]  Therefore, the government satisfied the timing requirement of filing the petition before the expiration of Harris's supervised release, and the district court retained jurisdiction to adjudicate the violations alleged in the fourth addendum.

Lastly, limiting the district court's supervisory authority, as Harris suggests, would eviscerate Congress's purpose in designing the current supervisory release scheme. Congress entrusted the district court with the discretion and authority to supervise defendants. *See generally* 18 U.S.C. § 3583.  We have observed that this "unique method of post-confinement supervision . . . fulfills rehabilitative ends," and "[t]he congressional policy . . . to improve the odds of a successful transition from the prison to liberty . . . ." *United States v. Buchanan*, 638 F.3d 448, 450 (4th Cir. 2011) (internal quotation marks and citations omitted).  The key to this scheme is the district court's "broad authority to protect the public," *United States v. Wing*, 682 F.3d 861, 878 (9th Cir. 2012) (Tallman, J., dissenting) (internal quotation marks and citation omitted), and its "ability to police violations of the release's conditions," *Cross*, 846 F.3d at 190.  Under Harris's theory, the

---

[3] Harris raises an alternative argument that he was not on supervised release while he was imprisoned for 30 days from October 6, 2015, to November 5, 2015.  Under 18 U.S.C. § 3624(e), "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."  We reject his argument because, as explained above, the post-revocation prison term was itself a part of Harris's supervised release, *see, e.g.*, 18 U.S.C. § 3583(e)(3); *Johnson* 529 U.S. at 705–06, and therefore Harris's post-revocation prison term was not "in connection with a conviction for a Federal, State, or local crime," 18 U.S.C. § 3624(e).

10

court would be powerless to act upon a newly discovered or alleged violation if the government does not file a petition before the court revokes the defendant's supervised release. This creates a powerful incentive for defendants to "readily admit to lesser violations to obtain more lenient sentencings" while hiding a more serious violation from the court. *United States v. Vázquez-Àlvarez*, No. 12-286 (GAG), 2015 WL 5090113, at *4 (D.P.R. Aug. 24, 2015). We decline to "eliminate[] the court's ability to punish defendants for more serious violations that it was not aware of at the time of revocation . . . ." *Id.*

The first revocation ended neither Harris's supervised release nor the district court's jurisdiction, and the government filed the fourth addendum while Harris was serving his post-revocation imprisonment. Therefore, we hold that the district court had jurisdiction to revoke Harris's second term of supervised release.

III.

We now consider whether the district court properly imposed a sentence within the maximum permitted under 18 U.S.C. § 3583(e). We hold that it did.

A.

Under 18 U.S.C. § 3583(b)(1), the statutory maximum for a term of supervised release for a Class B felony is 60 months. If the district court revokes the term of supervised release, it may "require the defendant to serve in prison all or part of the term

11

of supervised release . . . without credit for time previously served on postrelease supervision . . . ." 18 U.S.C. § 3583(e)(3). Of those 60 months, however, a defendant "may not be required to serve on any such revocation . . . more than 3 years in prison . . . ." *Id.* 18 U.S.C. § 3583(h) provides that "the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment," but that term of supervised release "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release."

Harris's original term of supervised release was for 48 months. After the first revocation, the district court imposed the first revocation sentence, consisting of one month of imprisonment and 40 months of supervised release. The first revocation sentence, then, was well within the maximum of 36 months for the total period of imprisonment, and the maximum of 60 months for the total period of supervised release for a Class B Felony. *See* 18 U.S.C. § 3583(b)(1), (e)(3). After the second revocation, the district court imposed the second revocation sentence, consisting of 36 months of imprisonment and 24 months of supervised release. Standing alone, the second revocation sentence reached the maximum sentence of 60 total months, including the maximum of 36 months of imprisonment. 18 U.S.C. § 3583(b)(1), (e)(3).

In arguing that the district court exceeded the statutory maximum for a Class B Felony, Harris erroneously aggregates the first and second revocation sentences. Harris contends, "the district court imposed 37 months of imprisonment and 64 months of

supervised release upon revoking a single supervised release term." Appellant Br. 23. 18 U.S.C. § 3583(e)(3) does not require the district court to credit time previously served on post-release supervision. The district court could sentence Harris up to 60 months of supervised release upon his second revocation without giving credit for any of the time that he had already served.

Similarly, 18 U.S.C. § 3583(e)(3) establishes that "on any such revocation" the district court may order the defendant to serve up to 36 months in prison for a Class B felony. Before 2003, the relevant portion of 18 U.S.C. § 3583(e)(3) did not include the phrase "on any such revocation," and courts generally aggregated all post-revocation imprisonment. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, § 101(1), 117 Stat. 650, 651 (2003); *United States v. Perry*, 743 F.3d 238, 241–42 (7th Cir. 2014). Post-amendment, however, we agree with the government that the phrase "on any such revocation" permits the district court to start anew with the statutory maximum without aggregating any post-revocation imprisonment.

Every sister circuit that has examined this amendment has concluded the same. *See, e.g., United States v. Cunningham*, 800 F.3d 1290, 1292–93 (11th Cir. 2015) (recognizing the amendment abrogated the cases that called for aggregation of sentences); *Perry*, 743 F.3d at 242 (holding that "prior time served for violations of supervised release is not credited towards and so does not limit the statutory maximum that a court may impose for subsequent violations of supervised release . . ."); *United*

13

*States v. Spencer*, 720 F.3d 363, 368 (D.C. Cir. 2013) (concluding that the amendment "results in the felony class imprisonment terms at the end of § 3583(e)(3) being per-revocation limits, and not aggregate limits"); *United States v. Williams*, 675 F.3d 275, 280–81 (3d Cir. 2012) (noting that "Congress did not intend to set an aggregate cap on successive revocation imprisonment"); *United States v. Shabazz*, 633 F.3d 342, 346 (5th Cir. 2011) ("If Congress had intended for courts to continue reading the language at the end of § 3583(e)(3) as an aggregate limit on revocation imprisonment it would have left . . . § 3583(e)(3) unaltered."); *United States v. Epstein*, 620 F.3d 76, 80 (2d Cir. 2010) (holding that § 3583(e)(3) applies to each discrete revocation, "irrespective of any time served for previous violations"); *United States v. Knight*, 580 F.3d 933, 937 (9th Cir. 2009) (stating that courts are not required to aggregate revocation sentences under the 2003 amendment); *United States v. Lewis*, 519 F.3d 822, 824–25 (8th Cir. 2008) (same); *United States v. Tapia-Escalera*, 356 F.3d 181, 188 (1st Cir. 2004) (noting that, through the 2003 amendment, "Congress has altered the statute to adopt the government's position" that the terms of imprisonment do not aggregate (emphasis omitted)).

In unpublished opinions, we have also concurred with our sister circuits. *United States v. Ware*, 639 F. App'x 919, 920 (4th Cir. 2016); *United States v. Rucker*, 578 F. App'x 291, 292 (4th Cir. 2014) (Mem.). We see no reason to now hold otherwise.

B.

Harris recognizes that the plain language of the statutory provisions stands against him. However, he argues that if the district court retained jurisdiction over the second revocation because the original term continued to remain in effect, then the court effectively revoked the same term of supervised release twice, requiring the court to consider the first and second revocation sentences in the aggregate. Harris's argument that the district court imposed additional punishment for his already-revoked, original term is contrary to the record. At the second revocation, the district court expressly stated that it was revoking "the period of supervised release on which the defendant is currently serving"—Harris's second term of supervised release. J.A. 311.

Moreover, although it is true that one term of supervised release continues past revocation, *see Johnson*, 529 U.S. at 705–06, the language of 18 U.S.C. § 3583(e)(3) assumes that supervised release can be revoked multiple times as long as the defendant continues to violate the release conditions. Harris's theory would convert per-*revocation* maximums into per-*term of supervised release* maximums. This is contrary to Congress's intent to create a per-revocation maximum.

Because 18 U.S.C. § 3583(e)(3) does not require the district court to aggregate the revocation sentences, but allows the court to start anew with the maximum "on any such revocation," the district court properly imposed a sentence within the statutory maximum. Therefore, we see no error.

15

IV.

We hold that the district court retained jurisdiction over Harris's supervised release and properly sentenced Harris within the statutory maximum. Accordingly, the judgment of the district court is

*AFFIRMED.*