RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0265p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 25-5112

SHAUN STEVEN KIDD,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
Nos. 1:10-cr-00114-1; 1:12-cr-00023-1—Curtis L. Collier, District Judge.

Decided and Filed: September 26, 2025

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Erin P. Rust, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

**OPINION**

───────────────

READLER, Circuit Judge. Two months after being released from prison, Shaun Kidd was accused of committing four violations of the conditions of his supervised release. Kidd largely admitted to three violations but contested the fourth. The district court found against Kidd on all four, revoked his release, and sentenced him to 14 months of imprisonment. On appeal, Kidd argues that the district court clearly erred in finding he committed the fourth violation. Because the other three violations render any error here harmless, we affirm.

I.

For much of his adult life, Shaun Kidd has been in trouble with the law. Kidd's crimes have been varied but constant. Starting at age 19, Kidd committed a bevy of thefts, passed bad checks, vandalized, assaulted and harassed others, and evaded arrest when officers sought to detain him on outstanding warrants. Two incidents resulted in federal felony convictions. First, Kidd persuaded a bank teller to transfer tens of thousands of dollars in customer funds to Kidd's PayPal account. For this conduct, Kidd was sentenced to 60 months in federal prison, to be served upon his release from a stint in state prison. But before his release by the state, Kidd committed his second federal felony by convincing a notary public to fax the Tennessee Department of Corrections a forged order instructing the state prison to let him go free after his term was complete instead of holding him for federal officials to take custody. After this scheme unraveled, Kidd received a sentence of an additional 108 months in prison.

Each of Kidd's federal sentences also included a supervised release term that would follow his imprisonment. And, in line with § 5D1.3 of the Sentencing Guidelines, those sentences placed a number of conditions on Kidd's future release. *See* U.S. Sent'g Guidelines Manual § 5D1.3 (U.S. Sent'g Comm'n 2024). Among them, Kidd was required to avoid committing another crime, truthfully answer all questions from his probation officer, and participate in programs involving mental health treatment and testing or treatment for drug and alcohol abuse.

Kidd was released from federal prison in September 2024 and began his term of supervised release. But roughly two months in, the probation office petitioned the district court to revoke Kidd's release. According to the probation office, Kidd failed to enroll in either a substance abuse or mental health treatment program, despite repeated instructions to do so from his probation officer. Making matters worse, Kidd lied to the officer, telling him that he was receiving services at a local provider. Kidd also failed to appear for his first random drug screen. Finally, a warrant had been issued charging Kidd with a state misdemeanor—assault and stalking—based on his interactions with a woman he had recently met. From all of this, the probation office alleged that Kidd was not complying with four conditions of his supervised release, including the condition to not commit another crime.

Kidd disputed just a sliver of those allegations.  He admitted that he lied to his probation officer.  He likewise agreed that he failed to follow his probation officer's instructions to enroll in a dual alcohol abuse and mental health treatment program.  And he did not contest that he failed to show for his first drug screen.  In short, Kidd admitted to violating two of his conditions of supervised release (lying to his probation officer and failing to enroll in mental health treatment), and effectively conceded a third violation (not participating in substance abuse testing or treatment).  All that Kidd seriously contested was the allegation that he had committed a new offense, a state misdemeanor.

That left it to the district court to consider whether Kidd in fact committed the state offense.  After hearing testimony from a Chattanooga police officer as well as a Deputy U.S. Marshal, both of whom had interfaced with Kidd's alleged victim, and after considering evidence of text messages between Kidd and the woman, the district court found by a preponderance of the evidence that Kidd had committed the misdemeanor.  That, along with Kidd's concessions, meant that he had violated all four conditions cited by the probation office.  Confronted with a guidelines range of 8 to 14 months, the district court opted to revoke the supervised release term in both of Kidd's federal cases and, aiming to keep Kidd incarcerated "as long as possible," imposed a sentence of 14 months.  *See* Revocation Hr'g Tr., 10-CR-114, R. 158, PageID#820, 824. Kidd appealed both revocation judgments.

II.

On appeal, Kidd contends that the district court erred in finding that he committed a crime and in revoking his term of supervised release on that basis.  We review the district court's fact finding here for clear error, *United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009), a standard that requires a "definite and firm conviction" on our part that "a mistake has been committed," *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation omitted).

Kidd maintains that the district court's findings so qualify.  While accepting that hearsay testimony typically is fair game for a revocation hearing, he argues that the district court nonetheless should have been highly skeptical of the alleged victim's unsworn statements to the

officers. Why? Kidd points to the lack of physical evidence or other corroboration suggesting that he assaulted or stalked the alleged victim. He likewise notes that the complainant refused to testify against him, resulting in the state charges being dismissed. And pointing to text messages he submitted into the record, Kidd argues that the district court ignored his "side of the story," namely, that the allegations simply sprung from an attempted "romantic relationship" that "went south," with the alleged victim seeking revenge by accusing him of assault and stalking. Appellant's Br. at 8, 14–15.

The government sees the evidence differently. To begin, it notes that the alleged victim made consistent statements to two different officers. It adds that other evidence—from a statement made about Kidd by a neighbor to the same text messages to Kidd's past behavior toward women—corroborated the district court's finding.

As a general rule, weighing conflicting evidence and picking which story is more persuasive is the district court's job, not ours on clear error review. *See Anderson*, 470 U.S. at 575. That said, there is no need to dwell on the point or further delve into the underlying allegations about Kidd's misdemeanor. For even if we agree that the district court's finding on the misdemeanor was in error, we see no reason why that error would have affected the decision to revoke Kidd's supervised release term or the resulting sentence. *See United States v. Kokoski*, 435 F. App'x 472, 475–76 (6th Cir. 2011).

In the end, the district court did not need to find that Kidd committed another crime to revoke his supervised release. Kidd committed three other Grade C violations that he largely did not contest in the district court (and has abandoned here). And, as a legal matter, "a single . . . violation [is] sufficient to support the district court's exercise of discretion to revoke" the term of supervision. *See United States v. Lindo*, 52 F.3d 106, 108 (6th Cir. 1995) (probation); *see also United States v. Johnson*, 356 F. App'x 785, 793 (6th Cir. 2009) (applying *Lindo* in the context of supervised release). As a result, where a defendant has separately violated multiple supervised release conditions and one violation standing alone would authorize revocation, we have repeatedly held that an error as to any single violation would not have altered the district court's decision to revoke the defendant's release, and our sister circuits have done the same. *See Johnson*, 356 F. App'x at 793; *United States v. English*, 400 F.3d 273, 276 (5th Cir. 2005);

*United States v. Jokhoo*, 141 F.4th 967, 969 (8th Cir. 2025); *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014); *see*, *e.g.*, *United States v. Henderson*, 811 F. App'x 935, 939 (6th Cir. 2020) (finding harmless error as to one Grade C violation with two others conceded).

That is especially true here, where any error would not have affected Kidd's guidelines range. *See United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998). That range was "determined by the violation having the most serious grade," coupled with Kidd's criminal history score. U.S. Sent'g Guidelines Manual §§ 7B1.1(b), 7B1.4 (U.S. Sent'g Comm'n 2024); *see also United States v. Wing*, 682 F.3d 861, 871 (9th Cir. 2012) ("[V]iolations of conditions of a term of supervised release are not individually punished."). Given the three Grade C violations that are uncontested on appeal and Kidd's criminal history, he would have faced the same guidelines recommendation of 8 to 14 months in prison even were the state offense excluded from his list of supervised release violations.

Nor did the determination that Kidd committed a misdemeanor affect the ultimate length of his sentence. At the outset, it bears noting that Kidd only alludes in passing to the idea that the challenged finding led the district court to sentence him to the "top of the incarceration range"; his briefing instead targets the predicate issue of whether there was sufficient evidence to support the finding. *See* Appellant's Br. at 12–13. And he did not file a reply brief responding to the government's harmlessness argument. That is not enough to preserve the argument on appeal. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006).

In any event, we are confident from our review of the revocation hearing transcript that even without the misdemeanor finding the district court would have reached the same sentencing decision. After finding that Kidd committed all four alleged violations of the conditions of his supervised release, the district court turned to whether to revoke Kidd's release and, if so, whether to sentence him to additional prison time. Familiar with Kidd from his prior offenses, the district court emphasized Kidd's lengthy criminal record and his immediate failure to "obey all the conditions of [his] supervision." Revocation Hr'g Tr., 10-CR-114, R. 158, PageID#819. In so doing, the district court did not mention the misdemeanor in its sentencing remarks, but instead highlighted Kidd's other violations, such as "lying to [his] probation officer" and "not receiving and attending the assigned treatment provisions." *Id.* Given these other supervised

release violations, the district court thought it best for Kidd to be incarcerated "as long as possible," resulting in the 14-month sentence. *Id.* at 820, 824. Accordingly, any error was harmless. *See Henderson*, 811 F. App'x at 939.

\* \* \* \* \*

We affirm.