[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11614

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KH'LAJUWON AMARI MURAT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-tp-20072-KMW-1

_____

Before JORDAN and BRASHER, Circuit Judges, and COVINGTON,* District Judge.

BRASHER, Circuit Judge:

The question in this appeal is whether a district court may rule on a limited number of counts in a petition to revoke supervised release, hold other counts in abeyance, and adjudicate those counts later. The government asked the district court to revoke Kh'Lajuwon Murat's supervised release due to seven alleged violations. After a hearing, the district court revoked Murat's supervised release based on violations that he admitted and held the others in abeyance. The district court sentenced Murat to five months' imprisonment and 54 months' supervised release. Then, on Murat's final day of the five months' imprisonment, the district court held a second hearing, ruled on the remaining violations, and sentenced Murat to four months' imprisonment and 48 months' supervised release.

Murat challenges this "second" revocation. He contends that the district court lacked jurisdiction to hold in abeyance and adjudicate the alleged violations in the petition after it revoked his supervised release based on other alleged violations in the same petition. We disagree. The first revocation of supervised release did not end the district court's jurisdiction to adjudicate the alleged violations that it had held in abeyance from a petition that was filed

_____

* The Honorable Virginia Covington, United States District Judge for the Middle District of Florida, sitting by designation.

before the revocation. The judgment and sentence of the district court is affirmed.

## I.

Murat was found guilty of bank fraud, identity theft, and a host of other charges. He was sentenced to 24 months and one day of imprisonment, to be followed by three years' supervised release. On January 17, 2023, Murat was released from prison and his term of supervised release began.

A few months after Murat's release, the government petitioned the district court to issue a warrant for Murat's arrest on the basis that he violated the terms of his release. Specifically, the government alleged that Murat (1) failed to submit a truthful and complete written monthly report; (2) traveled to California without the permission of his probation officer or the court; (3) associated with a person engaged in criminal activity because two individuals had been observed at his residence smoking marijuana; (4) failed to answer truthfully all inquiries made by his probation officer; (5) failed to refrain from a new violation of the law by committing the Florida offense of felon in possession of ammunition; (6) failed to refrain from a new violation of the law by committing the federal offense of possession of ammunition by a convicted felon; and (7) failed to refrain from a new violation of the law by committing the federal offense of aggravated identity theft. The district court issued a warrant for Murat's arrest.

In February 2024, the district court held a hearing on the government's allegations that Murat had violated the terms of his

supervised release. Murat admitted to violations one, two, and four. The district court accepted Murat's admissions, revoked his supervised release, and sentenced him to five months' imprisonment and 54 months' supervised release. The government explained that it was still investigating violations five through seven and that it did not intend to proceed with violation three, so the district court held violations five through seven in abeyance to be resolved at a later date.

On the same day that Murat was scheduled to be released from prison, the district court held a hearing to consider violations five through seven. Murat challenged the district court's jurisdiction, but the district court rejected Murat's arguments, found for the government on violation five, and dismissed violations six and seven. It then sentenced Murat to four months' imprisonment and 48 months' supervised release.

Murat appealed.

## II.

We review questions concerning a district court's subject matter jurisdiction *de novo*, *Mesa Valderrama v. United States*, 417 F.3d 1189, 1194 (11th Cir. 2005), and we may affirm for any reason the record supports, even if the district court did not rely on that reason, *Henley v. Payne*, 945 F.3d 1320, 1333 (11th Cir. 2019). Issues raised for the first time on appeal are reviewed for plain error. *United States v. Clark*, 274 F.3d 1325, 1326 (11th Cir. 2001).

### III.

Supervised release is a "form of postconfinement monitoring provided to facilitate a transition to community life." *United States v. Hall*, 64 F.4th 1200, 1202–03 (11th Cir. 2023) (internal marks omitted); *Mont v. United States*, 587 U.S. 514, 523 (2019). A term of supervised release ends on its date of expiration. But a district court may also "terminate a term of supervised release" early or "extend a term of supervised release if less than the maximum authorized term was previously imposed." 18 U.S.C. § 3583(e)(1) & (2).

During a term of supervised release, the defendant must comply with certain conditions, such as not committing another crime or refraining from drug use. *See* 18 U.S.C. § 3583(d). "If a defendant violates a condition of his supervised release, the district court may revoke the supervised release and impose a revised sentence." *Hall*, 64 F.4th at 1203. The revised sentence may include a term of imprisonment. *Id.*; 18 U.S.C. § 3583(e)(3). And the court may also require "that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(h).

In this case, the district court found that Murat violated the terms of his supervised release in two separate hearings. At the first hearing, the district court found that Murat had violated three technical conditions and imposed five months' imprisonment to be followed by 54 months' supervised release. Then, on Murat's final day of the five months' imprisonment, the district court found that

Murat had committed other violations and imposed four months' imprisonment to be followed by 48 months' supervised release.

Murat argues that the district court erred in imposing the second sentence in two ways. First, he says the district court lacked jurisdiction. In his view, the plain language of the statute governing supervised release, 18 U.S.C. § 3583, mandates that his original term of supervised release was extinguished when the district court revoked it at the first hearing—and, as a result, the district court could not revoke it a second time. Second, he argues that his second sentence was illegal because the district court entered two separate revocation orders. In his view, either the second four-month term of imprisonment replaced the already-imposed five-month term, meaning that he overserved his sentence, or the 48-month term of supervised release was an addition to the already-imposed 54-month term of supervised release, meaning the district court sentenced him above the statutory maximum.

We disagree. We will address each of Murat's arguments in turn.

*A.*

We will begin with Murat's jurisdictional argument. Murat notes that a district court must correct errors in a sentence within 14 days. *See* Fed. R. Crim. P. 35(a). Murat contends that, when the district court revoked his term of supervised release based on technical violations—charges not related to the commission of criminal offenses—it lost jurisdiction to later revoke based on substantive violations even though those violations were in the same petition.

We disagree. The district court's second revocation order addressed additional violations; it did not correct an error in the original revocation order. The first revocation of supervised release did not end the district court's jurisdiction to adjudicate the alleged violations that it held in abeyance from a petition that was filed before that revocation.

We reach this conclusion for three reasons.

First, we believe this result is compelled by the Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000). There, the Supreme Court held that a previous version of section 3583(e)(3) permitted a district court to impose an additional term of supervised release following revocation and reincarceration for violations of the original term of supervised release. *Id.* at 706–07, 713. To be sure, section 3583(h) now provides this exact authority. But because section 3583(h) was a statutory amendment that took effect after the conviction in *Johnson* (and did not apply retroactively), the Supreme Court asked whether section 3583(e)(3) conferred the same power. *Id.* at 701. It held that it did.

The Court reached that conclusion because a *revocation* under section 3583(e)(3) did not *terminate* the term of supervised release. According to the Court in *Johnson*, terminating a term of supervised release means to end it "without the possibility of its reimposition or continuation at a later time"—the defendant is discharged and no longer under court supervision. *Id.* at 704. By contrast, revoking a term of supervised release allows it to "continue[ ] to have some effect." *Id.* at 706. The Supreme Court observed that,

after revocation, "if the term of supervised release is being served, in whole or part, in prison, then something about the term of supervised release survives the preceding order of revocation." *Id.* at 705 (internal marks omitted). When a defendant is reincarcerated for violating his supervised release, he is *still serving that term of supervised release*—albeit in prison—and the sentencing court still has jurisdiction over that term. *See id.* at 705 (explaining that, "[s]o far as the text is concerned, it is not a 'term of imprisonment' that is to be served, but all or part of 'the term of supervised release.'").

Because the district court issued its second order revoking Murat's term of supervised release while he was still serving that term in prison, this case is on all fours with *Johnson*. The import of *Johnson* is that a district court's jurisdiction remains throughout a defendant's reincarceration—and, therefore, a district court may impose an additional term of supervised release following imprisonment. Murat was in prison—reincarcerated—when the district court imposed an additional term of imprisonment and supervised release. There is no daylight between Murat's case and *Johnson*.

Murat argues that *Johnson* is irrelevant because the statutory language in section 3583(e) has changed, but Murat has not focused on the relevant language. The unamended version of section 3583(e)(3) authorized a district court to "revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for the time previously served on postrelease supervision." *Id.* at 704. The amended version, in turn, authorizes a district court to "revoke a term of

supervised release, and require the defendant to serve in prison all or part of the term of supervised release *authorized by statute for the offense that resulted in such term of supervised release* without credit for time previously served on postrelease supervision." 18 U.S.C. § 3583(e)(3) (emphasis added). Congress did not change the language the Supreme Court interpreted in *Johnson*. Instead, as our sister circuit has explained, "[s]ection 3583(e)(3) says now, just as it did then, that revocation means the defendant must 'serve in prison all or part of the term of supervised release[.]'" *United States v. Cross*, 846 F.3d 188, 190 (6th Cir. 2017).

Second, it is undisputed that the government timely filed its petition to revoke before Murat's term of supervised release ended. Nothing in section 3583 purports to end or limit a district court's jurisdiction to act on a petition for revocation that was timely filed. On the contrary, according to section 3583(i), a district court's power to revoke a term of supervised release "extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation." Here, the government's operative petition—one that included both the technical and substantive violations—was filed before Murat's first revocation. So even if we were to assume, as Murat contends, that a revocation is equivalent to an expiration, section 3583(i) specifically provides for tolling in a circumstance like this one where a supervised release term ends without action on a timely filed petition.

Third, our reasoning is consistent with that of our sister circuits.

The Fourth Circuit, for example, has addressed a situation exactly like ours. In *United States v. Winfield*, the court held that a district court retained jurisdiction following revocation of a term of supervised release and therefore had jurisdiction to impose a second prison sentence for violations of that supervised release. 665 F.3d 107, 108 (4th Cir. 2012). There, the government petitioned to revoke Winfield's supervised release, alleging technical and substantive violations. *Id.* at 109. The district court held a hearing on the technical violations and sentenced him to 12 months' imprisonment. *Id.* A few months later, while Winfield was serving his 12 months' imprisonment, the district court adjudicated his substantive violations and imposed another 12-month sentence. *Id.* Winfield, like Murat, argued that the district court could not sentence him for the substantive violations because it lost jurisdiction after sentencing him for the technical violations. *Id.* at 110.

The Fourth Circuit disagreed. Relying on *Johnson*, the court explained that the district court's revocation of the term of supervised release did not end the court's jurisdiction because "a revocation of a term of supervised release is not equivalent to a termination of the release, and thus the revoked term remains in effect." *Id.* at 112. The court reasoned that Winfield's "term of supervised release had not expired by the [first] hearing and remained in effect upon the district court's effective revocation of the term in that

proceeding." *Id.* This case is identical to *Winfield*, and we find the Fourth Circuit's reasoning persuasive.

To be sure, our sister circuits have also addressed other questions that this case does not present. The Fourth Circuit has held that a district court has jurisdiction to adjudicate new allegations that the government makes during a post-revocation prison term. *See United States v. Harris*, 878 F.3d 111, 116 (4th Cir. 2017). The Sixth Circuit has held that a district court may adjudicate a petition to revoke even if it is filed *after* the petitioner starts serving a successive term of supervised release. *See Cross*, 846 F.3d at 189–90. And the Ninth Circuit has held that a district court may not revoke a second term of supervised release based on newly discovered violations from an earlier term. *See United States v. Wing*, 682 F.3d 861, 864 (9th Cir. 2012). Although we need not answer these questions today, our conclusion is consistent with these decisions. No circuit has held that, if a district court revokes a term of supervised release under section 3583(e)(3) and sentences the defendant to a term of imprisonment, the court lacks jurisdiction to adjudicate additional alleged violations made in the original timely-filed petition during the defendant's imprisonment.

For these reasons, we reject Murat's first argument: The first revocation did not end the district court's jurisdiction to adjudicate the alleged violations held in abeyance from a timely petition filed before that revocation.

*B.*

Murat next argues that the district court erroneously entered two separate revocation orders instead of just one, and he says this procedural mistake rendered his sentence illegal. In his view, either the four-month term of imprisonment replaced the already-imposed five-month term, meaning that he overserved his sentence, or the 48-month term of supervised release was an addition to the already-imposed 54-month term of supervised release, meaning the district court failed to account for his time already served.

Because he raised this argument for the first time on appeal, we review it for plain error. *Clark*, 274 F.3d at 1326. To meet the plain error standard of review, Murat must establish that the district court committed error, the error was plain, the error affected substantial rights, and a failure to correct the error would seriously undermine the fairness, integrity, or public reputation of a judicial proceeding. *United States v. Steiger*, 99 F.4th 1316, 1324 (11th Cir. 2024) (en banc).

Murat's argument rests on a mistaken interpretation of the second revocation order. That order did not impose an additional 48 months of supervised release on top of the 54-month term from the first revocation order. Instead, read alongside the district court's pronouncement at the second revocation hearing, the second order worked together with the first order to impose a single 48-month supervised term and a total of nine months' imprisonment for violations of supervised release. At the hearing, the

district court noted that Murat had already served five months' imprisonment and the parties argued over how much additional time (if any) he should be required to serve. The district court understood this situation and proceeded accordingly.

Practically speaking, there is little daylight between how Murat contends the district court *should* have proceeded and how it *actually* proceeded. The district court entered two separate revocation orders—one after each hearing on the government's petition. Murat argues that the district court should have entered a single revocation order after adjudicating all the counts in the petition. But the district court's initial revocation order was not a final judgment—on the contrary, it expressly contemplated future proceedings to adjudicate the substantive offenses. And the second order expressly referenced the first order and the punishment imposed in that first order. Viewed together, the district court sentenced Murat to nine months of imprisonment and 48 months of supervised release for his violations. And that total sentence was legally permissible. Murat fails to identify any prejudice from the use of an abeyance procedure or the filing of separate revocation orders—one interim, one final.

The district court certainly had the discretion to proceed differently. It could have held a separate hearing on the technical violations, but waited to announce its final sentencing decision and enter a single revocation order after it had adjudicated everything. Or it could have held a single hearing on everything. And indeed, either of these routes may have been preferable as a matter of

procedure. But whatever may be said of the district court's approach, it was not plain error.

## IV.

The judgment and sentence of the district court is **AFFIRMED**.